MOORE v. MOORE.

(Circuit Court of Appeals, Third Circuit. January 30, 1919.)

No. 2375.

1. CONTRACTS ⬅93(4)—MISTAKE.

A promise, where there is no legal obligation, and made, whether through ignorance of rights or misconception of the law, to avoid something that cannot happen, is without consideration and invalid.

2. HUSBAND AND WIFE ⬅278(2)—CONTRACT CONDITIONED ON DIVORCE.

While a contract by a husband, separated from his wife, for her support during such separation, is lawful, one made during separation, and pending suit by the wife for divorce, by which the husband binds himself and estate to pay her a stipulated sum per week during life, conditioned upon the granting of the divorce, is contrary to public policy and void.

In Error to the District Court for the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by Lucile W. Moore against Alexander P. Moore. Judgment for defendant, and plaintiff brings error. Affirmed.

Arthur O. Fording and Richard Townsend, both of Pittsburgh, Pa., for plaintiff in error.

John O. Wicks and John S. Weller, both of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This action is in assumpsit. The contract declared on was made by the parties in their relation of husband and wife. It was entered into when they were living separate and apart and bears date the day following the institution of proceed-

ings by the wife for divorce from her husband. The contract is under seal, recites the marriage and pendency of divorce proceedings, and contains two undertakings on the part of the husband. The first is, that the husband shall pay his wife "for counsel fees, expenses and alimony, pendente lite, the sum of seventy-five ($75) dollars a week" from the date of the contract "until the date of the final determination of said divorce proceedings." The second is, "That should the said divorce proceedings be decided in favor of the said wife, and a decree of divorce a vinculo matrimonii be granted by the said court in said case, the said Alexander P. Moore, his heirs, executors and administrators" shall pay to his said wife "from the date of the said decree, for and during the term of her natural life, the sum of seventy-five ($75) dollars a week," and "that said court shall fix and determine the support or alimony to be seventy-five ($75) dollars a week, payable weekly as aforesaid, and make the same a part of its decree."

A divorce a vinculo matrimonii was granted. In formulating the decree, the contract for support of the wife after divorce was not submitted to the court, but the court, nevertheless, incorporated its substance in a decree for alimony. After obeying the decree for five years, the husband ceased making payments, contending that the decree, in so far as it imposed alimony, was beyond the court's jurisdiction.

In a proceeding of attachment, instituted by the wife to enforce the decree for alimony, the Court of Common Pleas No. 4 of Allegheny County—the court that entered the decree—dismissed the proceeding with a frank admission that the decree for alimony was inadvertently entered and was in excess of its jurisdiction. Appeal was taken to the Superior Court of the State of Pennsylvania—the appropriate appellate tribunal of last resort—where the order of the Court of Common Pleas discharging the rule for attachment was affirmed on an opinion holding that under the Constitution and statutes of that state, which had not changed the common law rule except where the husband is libelant, alimony cannot be awarded upon a divorce a vinculo matrimonii. Moore v. Moore, 64 Pa. Super. Ct. 192.

The divorced wife then abandoned her claim for alimony under the decree and brought in the court below this action for support under the contract between her husband and herself.

The defendant, by affidavit of defence—a proceeding in Pennsylvania under the Practice Act of 1915, P. L. 483, similar to the common law proceeding by demurrer—raised the question of law, whether the contract is on its face and on the plaintiff's showing of facts invalid because contra bonos mores.

On this question, the District Court sustained the defendant and entered judgment accordingly. The plaintiff sued out this writ-of-error, asserting here, as below, the validity of the contract.

The plaintiff has relieved us of the necessity of discussing at length the general principles of law that bear on the question before us by conceding, "that an agreement which looks to a possible or intended future separation, or which might encourage such, is void; and that

a contract whose consideration is the obtaining of a divorce is contra bonos mores, and void;" and that "a contract though expressing another consideration, should be void if its true purpose is to procure a divorce, or if its tendency is to cause a divorce to be obtained."

To escape the application of these universally admitted principles to the contract sued on, the plaintiff takes two positions. Of these the first, in the language of her counsel, is, that "no one has brought upon the record the fact that the Common Pleas granted the divorce." If this fact be excluded from the case, the suit ends here. But there are phases of the case of such serious import that we are not inclined to dispose of it summarily on this position.

In passing on the plaintiff's contention that the fact of divorce is not in the record and therefore is not to be regarded as in the case, it may be sufficient to emphasize by repetition that the contract contains two undertakings by the defendant; first, to pay his wife a given sum for expenses and alimony pendente lite, and second, to pay her a like sum for "support or alimony" *after a decree of divorce has been granted*. The plaintiff's statement of claim does not show on which undertaking this action was brought. Manifestly it cannot at this date be brought on both. If brought on the first, that is, on the undertaking for alimony pendente lite, she cannot recover for her husband's default in paying for her support at a time five years after the litigation had ended; if on the second, that is, on the undertaking for "support or alimony" after divorce has been granted, she cannot recover unless the fact that a decree for divorce has been granted—the condition precedent on which her right of action is predicated—is averred in her statement of claim and proved or is otherwise established.

Although the plaintiff has failed to plead this essential fact, we are not inclined to dispose of her case on this ground, for we prefer—as her counsel probably expected—to take judicial notice of the fact of divorce as established by public records and shown by published reports. In the discussion that is to follow, we shall consider that the divorce contemplated in the contract has been granted and that the event on which the husband's undertaking was based, has occurred.

The second position which the plaintiff assumes in order to take the case from under the law applicable to a contract between husband and wife having a tendency to aid or facilitate the granting of divorce is, that husband and wife may contract while married with reference to and in recognition of a present separation, and that such a contract is valid and effectual, both in law and equity, provided its object be actual and immediate, and not contingent or prospective. In urging this as the applicable law of the case, the plaintiff maintains, that the contract in suit, when entered into, had to do with an actual separation between the wife and husband then existing, and extended to the support of the wife during that separation as it continued in the future, as distinguished from a contract for support conditioned upon and following a decree for divorce.

We do not question this statement of the law; we question, rather, its application to the contract in this case and to the circumstances under which the contract was made. It is well settled both in Eng-

land and in the United States—and particularly in Pennsylvania—that an agreement of separation between husband and wife, made after separation has taken place, whereby the husband provides for the wife's separate maintenance during the continuance of such separation is lawful, and is not in contravention of public policy. Wilson v. Wilson, 1 H. L. Cas. 538; Hunt v. Hunt, 5 Law T. Rep. 778; Daniels v. Benedict, 97 Fed. 367, 372, 38 C. C. A. 592 (C. C. A. 8th); 6 R. C. L. 771, and cases; Hutton v. Hutton's Adm'r, 3 Pa. 100; Speidel's Appeal, 107 Pa. 18; Frank's Estate, 195 Pa. 26, 33, 45 Atl. 489; Singer's Estate, 233 Pa. 55, 81 Atl. 898; Murh's Estate, 59 Pa. Super. Ct. 398. But the contract here under discussion, while entered into at a time when there was a separation between husband and wife presently existing, was made not with reference to that separation as it then existed, but with reference to a contemplated future separation yet to arise out of and to follow an anticipated future event, which was the entry of a decree for divorce. This was another separation, and a separation of another kind. This fact, we think, carries the case away from the principles of law applicable to a contract for a wife's maintenance during a present separation, and takes it back to the very principles of law applicable to a contract for future separation which the plaintiff conceded but endeavored to avoid at the threshold of the argument. Thus, there is raised a question with two aspects, first whether the contract in suit was based on an immoral consideration, and if not, whether its true purpose or its tendency was to induce the future separation to which it relates by stimulating the wife in the prosecution of her suit for divorce in a manner and measure opposed to sound principles and public policy.

[1] Does the contract contain a valid consideration? The contract is unilateral. It contains two promises by the husband and none by the wife. Admittedly, no express consideration moved from the wife to the husband. The only consideration for the husband's promise named in the contract is the husband's relief from annoyance in having "his financial condition, and the value of his business, and his business interest, * * * made the subject of judicial investigation" and disclosed to the public by the court in determining alimony, which both parties, we must assume, mistakenly thought would be imposed by the decree of divorce. As there rested on the husband no legal obligation for his wife's support after divorce of the character contemplated in the agreement, and, as, accordingly, no decree for alimony could validly be entered against him, Moore v. Moore, 64 Pa. Super. Ct. 192, it follows that no inquiry by the court into the husband's affairs to determine the amount of alimony could validly be made. A promise made where there is no legal obligation, and made, whether through ignorance of rights or misconception of the law, to avoid something that cannot happen, lacks valid consideration, and is not binding. Logan v. Mathews, 6 Pa. 417; Offutt v. Parrott, 1 Cranch, C. C. 154, 18 Fed. Cas. 606, No. 10,453; Maull v. Vaughn, 45 Ala. 134; Grimes v. Grimes, 89 S. W. 548, 28 Ky. Law Rep. 549.

It would appear, therefore, that the contract is void for want of consideration. But opposed to this view, the plaintiff cites and con-

fidently relies upon the case of Blaker v. Cooper, 7 Serg. & R. (Pa.) 500, where the court sustained a contract made between husband and wife while separated, providing for the wife's support for her natural life. Subsequently the parties were divorced—at whose instance it does not appear—and the wife remarried. The husband stopped payments and the wife sued on the bond accompanying the contract. The report of the case shows very clearly that the husband, who was a man of landed property, made his promise of support on a valid consideration—the wife's release of dower—and not on a misconception of the law as to his obligation to support his wife after divorce. The point was made that the contract provided for alimony, and, that, as under the Pennsylvania law the husband was not liable for alimony after divorce a vinculo matrimonii, the contract expired with the granting of divorce. The court decided otherwise. The case cited does not rule this case, because there a valid consideration for the husband's promise was found, while here no such valid consideration appears, and also in that case the promise, not being made in contemplation of divorce and for the wife's support during the separation that would follow, was not contra bonos mores, while here the promise, if not literally given in consideration of divorce, its performance was conditioned on divorce, and raises the question of public policy.

[2] If nothing more were in the case than the question of the validity of the consideration just discussed, we would hold that the judgment of the court below should be affirmed. But we prefer, rather, to decide the case on another ground, which extends beyond the immediate interests of the parties and relates to considerations of good morals and public policy.

The question whether the contract is against public policy must be determined by its purpose and tendency. 6 R. C. L. 707. Admitting this, the plaintiff maintains, that the purpose and tendency of the contract are questions for the jury, and, that, accordingly, the trial judge erred in deciding them himself. But, where the facts are conceded, or are not in dispute, as on demurrer or on affidavit of defense under the Pennsylvania practice, or where the question does not depend upon the circumstances under which the contract was entered into, the question whether a particular contract contravenes public policy is to be determined by the court, not by the jury. 6 R. C. L. 710. The contract being before the court on pleadings that show all the facts, the question whether a contract which contemplates a future separation has a tendency to induce such separation in a manner that contravenes public policy is one of interpretation by the court. 6 R. C. L. 771, and cases.

It cannot be denied that the contract in this case contemplates separation in the future, that is, a separation that will follow future divorce. It looks to, not merely a possible, but an intended separation. The husband's promise is enforceable, if at all, only after a divorce a vinculo matrimonii has been granted; therefore, his promise is conditioned on that event. Has the promise a tendency to induce that event? The promise was not made to cover merely a real or fancied obligation. A promise to discharge such an obligation,

even if otherwise valid would be void if its tendency was to induce an unlawful thing. But the promise was for something more than for support of the divorced wife during the period of the husband's life—an obligation which the laws of some states would impose upon him. He undertook to support her for her life, and to do this, he bound "his heirs, executors, and administrators" to continue payments for her support after his death. By this promise, the wife was shown, that if she succeeded in getting a divorce, she would receive more than the law would award her, even if the law were as she thought it. This was a substantial inducement to her to prosecute her divorce proceeding to the decree on which alone she could reap the promised reward. Manifestly, the tendency of the husband's promise as it affected the wife was to encourage her to prosecute the suit to a successful termination, or, at the very least, to deter her from abandoning it. Such an undertaking savors of collusion, a thing the divorce laws of Pennsylvania very vigorously denounce. The husband had some reason for making the promise other than a sense of legal obligation to support his wife after divorce. He doubtless expected some benefit in return for the detriment he would suffer and his estate would sustain by payments to be made by him and his executor through an unknown period of years. It must be believed that there is hidden in the contract some consideration, other than the one we have already disposed of, which inspired him voluntarily to enter into an obligation of such substantial character. The promise of the husband to do what the law did not require of him and to do it in a measure even beyond his own misconception of the law's requirements, suggests the real consideration that moved him to his promise. If, because of the silence of the contract and the absence of evidence aliunde, we cannot hold that the consideration of the husband's promise was the obtaining of the divorce which his wife was seeking, we find that the promise shows a willingness on his part, if nothing more, to promote and pay for the event which the wife alone could bring about. A contract to do such a thing tends inevitably to encourage the beneficiary to perform the condition on which alone she can receive its benefits.

The marital relation is regarded by the law as the basis of the social organization. The preservation of that relation is deemed essential to public welfare. Agreements between parties that are conditioned on divorce, Barngrover v. Pettigrew, 128 Iowa, 533, 104 N. W. 904, 2 L. R. A. (N. S.) 260, or that tend to destroy that relation by encouraging or facilitating the procuring of divorce, are against good morals and will not be enforced. The maxim, "Ex turpi contractu non oritur actio," founded as it is on sound morals, has been long recognized by the courts in the administration of justice. The contract in suit, as we interpret it, is very different from contracts sustained by courts in some states where the husband's obligation to support his wife continues after divorce and is provided for by alimony, and where such agreements are regarded by the courts as a satisfactory short cut to aid them in framing decrees. Hammerstein v. Equitable Trust Co., 156 App. Div. 644, 141 N. Y. Supp. 1065, 1070; Werner v. Wer-

ner, 153 App. Div. 719, 138 N. Y. Supp. 633; Doeme v. Doeme, 96 App. Div. 284, 89 N. Y. Supp. 215, 218; Nelson v. Vassenden, 115 Minn. 1, 4, 131 N. W. 794, 35 L. R. A. (N. S.) 1167; Ham v. Twombly, 181 Mass. 170, 173, 174, 63 N. E. 336. Even in cases in these states, contracts for support in the nature of agreed alimony are not sustained if they disclose a tendency to encourage divorce. Werner v. Werner, 153 App. Div. 719, 138 N. Y. Supp. 633; Maisch v. Maisch, 87 Conn. 377, 383, 87 Atl. 729; Gibbons v. Gibbons (Ky.) 54 S. W. 710, 711.

We regard the contract in suit void as tending to aid and facilitate the obtaining of a divorce by encouraging the wife vigorously to prosecute her action, and that, being void, because opposed to public policy, the contract cannot be rendered valid either by the presence of an otherwise lawful consideration or by the mere ceremony of attaching a seal to it. Gaslight & Coke Co. v. Turner, 5 B. N. C. 675; Standard Lumber Co. v. Butler Ice Co. (C. C. A. 3d) 146 Fed. 359, 76 C. C. A. 639, 7 L. R. A. (N. S.) 467.

The judgment below is affirmed.